# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VERONIKA WARD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>PEPPERIDGE FARM, INC.,<br><br>Defendant. | Case No. 1:24-cv-00078<br><br>Hon. Andrew L. Carter, Jr. |

**PEPPERIDGE FARM, INCORPORATED'S MEMORANDUM OF LAW IN SUPPORT**

**OF MOTION TO DISMISS THE COMPLAINT**

**TABLE OF CONTENTS**

                                                                                                                **Page**

I. INTRODUCTION ..................................................................................................................1

II. FACTUAL BACKGROUND ................................................................................................2

III. LEGAL STANDARD ............................................................................................................3

IV. ARGUMENT .........................................................................................................................4

        A. Plaintiff Has Not Plausibly Alleged Consumer Deception .......................................4

                1. Plaintiff Does Not Plausibly Allege That Citric Acid Is Artificial ..............4

                2. Plaintiff Does Not Plausibly Allege That Citric Acid Functions As A Preservative In The Products ...................................................................6

                3. The Products' Labels Are Not Deceptive ....................................................8

        B. Plaintiff's Claims Are Preempted Because They Create An Obstacle To Accomplishment Of FDA's Regulatory Scheme ......................................................8

        C. Plaintiffs' Breach Of Express Warranty Claim Fails..............................................11

V. CONCLUSION ....................................................................................................................12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009).................................................................................................................3, 4

*Backus v. Nestlé USA, Inc.*,
　167 F. Supp. 3d 1068 (N.D. Cal. 2016) .......................................................................................9

*Barreto v. Westbrae Nat., Inc.*,
　518 F. Supp. 3d 795 (S.D.N.Y. 2021).........................................................................................11

*Cohen v. Apple Inc.*,
　46 F.4th 1012 (9th Cir. 2022) ......................................................................................................9

*Farina v. Nokia Inc.*,
　625 F.3d 97 (3d Cir. 2010)...........................................................................................................9

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*,
　458 U.S. 141 (1982).....................................................................................................................9

*Foster v. Whole Foods Mkt. Grp., Inc.*,
　2023 WL 8520270 (2d Cir. Dec. 8, 2023) ...................................................................................8

*Geier v. Am. Honda Motor Co.*,
　529 U.S. 861 (2000)................................................................................................................9, 11

*Hardy v. Olé Mexican Foods, Inc.*,
　2023 WL 3577867 (2d Cir. May 22, 2023) .................................................................................8

*Hawkins v. Coca-Cola Co.*,
　654 F.Supp.3d 290 (S.D.N.Y. 2023)............................................................................................6

*Hoffman v. Kraft Heinz Foods Co.*,
　2023 WL 1824795 (S.D.N.Y. Feb. 7, 2023)................................................................................4

*Hu v. Herr Foods, Inc.*,
　251 F. Supp. 3d 813 (E.D. Pa. 2017) ........................................................................................6, 7

*Insolia v. Philip Morris Inc.*,
　128 F. Supp. 2d 1220 (W.D. Wis. 2000) ...................................................................................10

*Klausner v. Annie's, Inc.*,
　581 F. Supp. 3d 538 (S.D.N.Y. 2022)........................................................................................12

*Maryland v. Louisiana*,
    451 U.S. 725 (1981) ............................................................................................................. 9

*Moore v. Trader Joe's Co.*,
    4 F.4th 874 (9th Cir. 2021) ................................................................................................ 8

*Orlander v. Staples, Inc.*,
    802 F.3d 289 (2d Cir. 2015) .............................................................................................. 4

*Samuels v. Air Transp. Loc. 504*,
    992 F.2d 12 (2d Cir. 1993) .............................................................................................. 10

*Sarr v. BEF Foods, Inc.*,
    2020 WL 729883 (E.D.N.Y. Feb. 13, 2020) ..................................................................... 4

*Simon v. Smith & Nephew, Inc.*,
    990 F. Supp. 2d 395 (S.D.N.Y. 2013) ............................................................................. 10

*Twohig v. Shop-Rite Supermarkets, Inc.*,
    519 F. Supp. 3d 154 (S.D.N.Y. 2021) ............................................................................... 4

*Valencia v. Snapple Beverage Corp.*,
    2024 WL 1158476 (S.D.N.Y. Mar. 18, 2024) ................................................................... 5

*Valle-Ortiz v. R.J. Reynolds Tobacco Co.*,
    385 F. Supp. 2d 126 (D.P.R. 2005) ................................................................................... 9

*Weinstein v. eBay, Inc.*,
    819 F. Supp. 2d 219 (S.D.N.Y. 2011) ............................................................................... 4

*Wynn v. Topco Assocs., LLC*,
    2021 WL 168541 (S.D.N.Y. Jan. 19, 2021) ...................................................................... 4

*Zuchowski v. SFC Global Supply Chain, Inc.*,
    2022 WL 3586716 (S.D.N.Y. Aug. 22, 2022) ............................................................. 6, 7

**Statutes**

7 U.S.C. § 6502(22) ..................................................................................................................... 5

**Other Authorities**

7 C.F.R. § 205.2 ........................................................................................................................... 5

7 C.F.R. § 205.605 ....................................................................................................................... 5

21 C.F.R. § 101.22 ............................................................................................................. 2, 9, 10

21 C.F.R. § 101.100 ................................................................................................................ 9, 11

Fed. R. Civ. P. 8 ............................................................................................................................7

Fed. R. Civ. P. 11 ..........................................................................................................................7

I.      **INTRODUCTION**

Plaintiff challenges the side-label statement "No Artificial Flavors or Preservatives" on *Goldfish® Flavor Blasted®* Baked Snack Crackers (the "Products") because the Products contain citric acid, which plaintiff alleges is an artificial preservative. But plaintiff fails to allege any facts to support the two key aspects of her claims, each of which is dispositive here.

First, the challenged label statement is "No *Artificial* Flavors or Preservatives," but plaintiff does not allege any facts (nor could she) to support the conclusion that the citric acid used in the Products is artificial. Second, plaintiff fails to allege that the citric acid ingredient in the Products is *functioning as a preservative*. Many commonly used food ingredients can serve multiple functions in food, *e.g.*, they can be used to provide taste, or act as thickeners, or act as a preservative. And although these multi-function ingredients can serve many purposes, they are often present in food solely for *one* of their possible functions. Citric acid is an example of such a multi-function ingredient. It can be present in food as a preservative but can also be present for purposes *other than* as a preservative, as it is in the Products where it serves the function of enhancing the taste of the crackers, and is not a preservative.[1]

Finally, plaintiff's challenge to the "No Artificial Flavors or Preservatives" side-label statement is impliedly preempted because it is an impermissible obstacle to the accomplishment of the goals of a carefully calibrated federal food labeling system promulgated by the Food & Drug Administration ("FDA"). FDA regulations confirm that product labels should accurately reflect the *actual purpose* for which the ingredient is used. Only if an ingredient is used as a preservative must it be labeled and identified as such. Plaintiff's theory is contrary to and incompatible with

---

[1] That is why the Flavor Blasted variety of Goldfish products are the only products challenged in this case. Goldfish products that are *not* the Flavor Blasted variety do *not* contain citric acid because they do not need the citric acid's taste enhancing function.

1

that policy because it would require food labeling based on *possible* but not actual function.

Because these deficiencies cannot be cured by amendment, the complaint should be dismissed with prejudice.

## II.   FACTUAL BACKGROUND

Plaintiff challenges the label statement "No Artificial Flavors or Preservatives" that appears on the side panel for *Goldfish® Flavor Blasted®* Baked Snack Crackers (the "Products"). *See* Compl. ¶ 1, 9. Plaintiff contends that when she purchased Goldfish Xtra Cheddar Flavor Blasted Snack Crackers, she understood the "No Artificial Flavors or Preservatives" label statement to mean that "the Product did not contain any artificial preservatives." *Id*. ¶ 7. Plaintiff concedes that the ingredient list identifies that the Products contain citric acid. *Id*. ¶ 9 at p. 4.



Like many ingredients, citric acid can serve more than one function in food. Citric acid can contribute to taste, act as a thickener, or act to preserve food. *See id*. ¶ 17 (recognizing that citric acid can be added to a product to impart flavor). FDA regulates ingredients as a preservative only when they *function* as a preservative. *Id*. ¶ 10 (quoting 21 C.F.R. § 101.22(a)(5). Plaintiff readily acknowledges this multi-function principle when she states that "*[e]ven if* the Products' citric acids do not function as a preservative in the Products, they nonetheless qualify as preservatives given that they have the capacity or tendency to" preserve. Compl. ¶ 18 (emphasis added). While plaintiff

alleges that citric acid can be used in foods as a preservative generally (Compl. ¶ 15-17), plaintiff does not provide any factual basis to support an allegation that the citric acid used in the Products serves a preservative function or was added to the Products to preserve them. Indeed, plaintiff challenges only "Flavor Blasted" Products, and acknowledges that citric acid can enhance taste, supporting the fact that enhancing taste is the function that citric acid serves in the Products.

Moreover, citric acid can occur naturally. *Id.* ¶ 19. While plaintiff makes the bare allegation that the citric acid in the Products "is commercially manufactured and the result of extensive chemical processing and is therefore artificial," plaintiff provides no factual basis for the allegation that the citric acid used in the Products is produced in this manner or is otherwise artificial. *Id.* Moreover, plaintiff provides no factual basis to support the general proposition that consumers would believe that citric acid is artificial solely because it may be commercially manufactured and chemically processed.

### III.   LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility" only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In evaluating a motion to dismiss, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. After that filtration, the court determines whether the remaining factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* This evaluation is necessarily "a ***context-specific*** task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (emphasis added). If the well-pleaded facts do not permit the court "to infer more than

3

the mere possibility of misconduct," the complaint fails to show "that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

To state a claim under New York General Business Law ("GBL") §§ 349 and 350, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *Wynn v. Topco Assocs., LLC*, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021) (quoting *Orlander v. Staples, Inc*., 802 F.3d 289, 300 (2d Cir. 2015)); *Hoffman v. Kraft Heinz Foods Co*., 2023 WL 1824795, at *4 (S.D.N.Y. Feb. 7, 2023). To survive a motion to dismiss, plaintiff "must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers." *Twohig v. Shop-Rite Supermarkets, Inc.*, 519 F. Supp. 3d 154, 160 (S.D.N.Y. 2021) (quotation marks omitted) (quoting *Sarr v. BEF Foods, Inc*., 2020 WL 729883, at *3 (E.D.N.Y. Feb. 13, 2020)). "Instead, plaintiffs must 'plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled.'" *Twohig*, 519 F. Supp. 3d at 160 (quoting *Sarr*, 2020 WL 729883, at *3); *see also Weinstein v. eBay, Inc*., 819 F. Supp. 2d 219, 228 (S.D.N.Y. 2011) (stating "the applicable legal standard is whether a reasonable consumer, not the least sophisticated consumer, would be misled by [a defendant's] actions").

IV.  **ARGUMENT**

    A.  **Plaintiff Has Not Plausibly Alleged Consumer Deception**

        1.  **Plaintiff Does Not Plausibly Allege That Citric Acid Is Artificial**

Plaintiff challenges the label statement "No *Artificial* Flavors or Preservatives," but cannot plausibly allege that the citric acid used in the Products is artificial. Plaintiff's vague and conclusory allegation that citric acid is "commercially manufactured and the result of extensive

4

chemical processing" is insufficient. *See* Compl. ¶ 19. Allegations about citric acid production *generally* are not sufficient to demonstrate that the specific citric acid ingredient used in the Products is artificial. *See Valencia v. Snapple Beverage Corp.*, 2024 WL 1158476, at *5-6 (S.D.N.Y. Mar. 18, 2024). That is particularly true here given that not all citric acid is artificial or synthetic. Indeed, USDA recognizes that citric acid can be a non-synthetic (natural) substance that is permitted in foods labeled organic. *See* 7 C.F.R. § 205.605(a)(1). Citric acid appears on this list because it is derived from an animal, plant or mineral and can be produced by a naturally occurring biological process. 7 C.F.R. § 205.2 (nonsynthetic); 7 U.S.C. § 6502(22).

In *Valencia,* the plaintiff challenged "All Natural" labeling on the ground that the product contained citric acid and that ingredient was artificial. 2024 WL 1158476, at *1. For two separate reasons, the *Valencia* court found plaintiff's allegations insufficient to show that the citric acid was not natural. First, the plaintiff failed to plausibly allege that the citric acid *in the challenged products* was industrially produced. *Id*. at *5. "Plaintiff's bare claim here that citric acid today is made from mold rather than citrus fruit cannot, absent any allegation specific to the Products and absent any basis for her assertion about all citric acid, be sufficient." *Id*.

Second, and perhaps more important, even if the plaintiff's allegations were sufficient to demonstrate that the citric acid in the product was industrially produced, the plaintiff still failed to allege that a reasonable consumer would regard the resulting citric acid as not natural. *Id*. at *6. While the citric acid might be produced using chemical reactions with synthetic agents, the plaintiff "does not allege that the resulting citric acid *contains synthetic agents*." *Id*. (emphasis added.) "A reasonable consumer would not think that a compound found in nature is artificial even if it is produced in a different way than nature produces it, if the way it is produced is that it is derived from a natural product and does not contain anything synthetic." *Id*.

The same result (dismissal) for the same reason (no allegations that the resulting citric acid contains synthetic constituents) is warranted here. *See Hawkins v. Coca-Cola Co.*, 654 F.Supp.3d 290, 306 (S.D.N.Y. 2023) ("the allegations in the instant Complaint are a far cry from raising 'any factually substantiated allegations' that the Product contains artificial malic acid, rather than natural malic acid."); *Zuchowski v. SFC Global Supply Chain, Inc.*, 2022 WL 3586716, at *3 (S.D.N.Y. Aug. 22, 2022) (Carter, J.) (noting that the complaint did not support the allegation that consumers expect a "No Artificial Flavors" representation to mean that the product contains "no chemically-altered flavors even if those flavors are derived from natural sources.").

### 2. Plaintiff Does Not Plausibly Allege That Citric Acid Functions As A Preservative In The Products

Plaintiff cannot state a viable claim for consumer deception because she does not plausibly allege that the Products are preserved by citric acid functioning as a preservative. Indeed, the focus of the complaint is not that the citric acid is *functioning* as a preservative, but rather that the citric acid is merely *present*. *See id.* ¶¶ 1-2, 9. Plaintiff does not (nor could she) allege a factual basis for the proposition that citric acid serves a preservative function in the Product. Absent plausible factual allegations demonstrating that citric acid is in the Product as, and functions as, a preservative, the complaint should be dismissed because there is no possibility of a material misrepresentation. *See Zuchowski*, 2022 WL 3586716, at *3 (dismissing GBL claims because plaintiff did not plausibly allege that the challenged ingredients were functioning as preservatives in the challenged product); *Hu v. Herr Foods, Inc.*, 251 F. Supp. 3d 813, 821-23 (E.D. Pa. 2017) (dismissing complaint because no factual allegations that citric acid was functioning as a preservative in the product).

*Zuchowski* is instructive. There, the plaintiff alleged that the label statement "PRESERVATIVE FREE CRUST" was misleading because the product contained ingredients

that the plaintiff claimed were preservatives. This Court dismissed the claims, finding that the plaintiff failed to adequately plead a materially misleading representation. 2022 WL 3586716 at *3. While the complaint alleged that the challenged ingredients functioned as anti-staling agents in bread and baked goods, the plaintiff did not "explain how these ingredients operate as preservatives in Defendant's product, frozen pizzas, as opposed to breads and baked goods." *Id*. Accordingly, the plaintiff did not sufficiently allege the presence of preservatives in the challenged food, so the "PRESERVATIVE FREE CRUST" deception claim failed. *Id*.

Similarly, in *Hu v. Herr Foods, Inc.*, the plaintiff alleged that the label statement "No Preservatives Added" was deceptive because the products contained citric acid, which the plaintiff alleged was a preservative. 251 F. Supp. 3d at 816. The defendant sought judgment on the pleadings because the plaintiff failed to plausibly allege that the citric acid *functioned* as a preservative in the products. *Id*. at 819. The court agreed, rejecting the plaintiffs' allegations about potential uses for citric acid, and finding that the plaintiff failed to plausibly allege that the citric acid functioned as a preservative *in the challenged products*. *Id*. at 822-23.

Here, plaintiff fails to plausibly allege that citric acid functions as a preservative in the Products. Plaintiff's bare allegation that "[c]itric acid functions as a preservative in the Products, and this is true regardless of Defendant's subjective purpose or intent for adding it to the Products, such as to impart flavor" is insufficient. *See* Compl. ¶ 17. Indeed, plaintiff completely hedges on even this partial allegation: "[e]ven if the Products' citric acids do not function as a preservative in the Products, they nonetheless qualify as preservatives given that they have the capacity or tendency to do so." *Id*. at ¶ 18.[2] And plaintiff's other allegations confirm that citric acid can be

---

[2] This form of pleading runs afoul of Fed. R. Civ. P. 8(d)(1) and 11(b). A defendant is entitled to direct and clear factual allegations so that it may defend itself at the motion to dismiss stage, as well as on the merits.

7

used to impart flavor (*id*. at ¶ 17), which is the case here with the "Flavor Blasted" Products.

Plaintiff's theory requires consumers to read the "No Artificial Flavors or Preservatives" statement as meaning "No Multi-Function Ingredients Where One Possible Function Is As A Preservative, Even Where The Ingredient Does Not Function As A Preservative In This Product." That interpretation, however, is fanciful, illogical, and insufficient to support a consumer deception claim. *See Moore v. Trader Joe's Co*., 4 F.4th 874, 883-84 (9th Cir. 2021) (reasonable consumer would not adopt plaintiffs' interpretation of product label).

### 3.     The Products' Labels Are Not Deceptive

The complaint must also be dismissed because it is not plausible that the reasonable consumer would be deceived by the challenged label statement. The Products' labels include an ingredient list and Nutrition Facts panel that identify the presence of citric acid in the Products. Accordingly, it is not plausible that plaintiff would see the "No Artificial Flavors or Preservatives" statement on the side panel of the label, but not also see that citric acid was in the Products. *See Hardy v. Olé Mexican Foods, Inc.*, 2023 WL 3577867, at *3 (2d Cir. May 22, 2023) ("*Mantikas* reaffirmed that we will 'consider the challenged advertisement as a whole, including disclaimers and qualifying language' and that 'context is crucial' in evaluating deceptive-marketing claims."); *Foster v. Whole Foods Mkt. Grp., Inc.*, 2023 WL 8520270, at *2 (2d Cir. Dec. 8, 2023) (plaintiff's interpretation of label statement implausible, but even if ambiguous, the label must be viewed as a whole and further information on the package clarified any potential ambiguity).

### B.     Plaintiff's Claims Are Preempted Because They Create An Obstacle To Accomplishment Of FDA's Regulatory Scheme

Plaintiff's challenge to the "No Artificial Flavors or Preservatives" statement is at odds with FDA's regulatory scheme, which does not require an ingredient to be labeled as a preservative

unless it is used as a preservative. *See, e.g.*, 21 C.F.R. § 101.22(a)(5) & (j) (FDA regulates preservative ingredients that *function as* a preservative); 21 C.F.R. § 101.100(a)(3) (ingredients that do not function as a preservative are not regulated as preservatives); FDA Compliance Policy Guide § 562.600 (same). Because of this conflict, plaintiff's claims are impliedly preempted.

Under the Supremacy Clause of the U.S. Constitution, conflicts that arise between state and federal law must be resolved in favor of federal law. *See* U.S. CONST. art. VI, cl. 2 ("[T]he Laws of the United States . . . shall be the supreme Law of the Land"); *Maryland v. Louisiana*, 451 U.S. 725, 746-47 (1981). Where a federal regulatory agency has regulated in an area of its expertise pursuant to a legal mandate, state law may not be used to bar conduct the agency has chosen not to prohibit. Otherwise, the threat of civil liability would erect an obstacle to the accomplishment of the comprehensive and carefully calibrated federal regulatory program. *See, e.g.*, *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881-82 (2000) (federal law that required a percentage of new cars to employ passive-restraint systems impliedly preempted state tort claims that would have had effect of requiring auto manufacturers to install air bags in all new cars); *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 156-59 (1982) (conflict preemption where state law limited availability of an option that federal agency thought appropriate to ensure its overall regulatory objectives); *Cohen v. Apple Inc.*, 46 F.4th 1012, 1028-31 (9th Cir. 2022) (same); *Farina v. Nokia Inc.*, 625 F.3d 97, 134 (3d Cir. 2010) ("The inexorable effect of allowing suits like Farina's to continue is to permit juries to second-guess the FCC's balance of its competing objectives . . . [and] would 'stand[] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress'") (citation omitted); *Backus v. Nestlé USA, Inc.*, 167 F. Supp. 3d 1068, 1071-74 (N.D. Cal. 2016) (tort suit imposing liability for presence of ingredient in food would impose liability for something FDA permitted); *Valle-Ortiz v. R.J. Reynolds Tobacco Co.*, 385 F.

9

Supp. 2d 126, 133 (D.P.R. 2005) (tort suits that would impose liability for manufacturing and selling cigarettes impliedly preempted because Congress chose to regulate rather than ban cigarettes); *Insolia v. Philip Morris Inc.*, 128 F. Supp. 2d 1220, 1223-24 (W.D. Wis. 2000) (allowing tort suits that might have effect of ending sale of cigarettes "would run afoul of the congressional policy that the sale of cigarettes is legal").

The Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. §§ 301 *et seq.*, as amended by the Nutritional Labeling & Education Act ("NLEA"), recognizes that additives like citric acid and Vitamin C are multi-functional and only regulates as preservatives—including with respect to labeling—those additives *functioning as preservatives*. For example, 21 C.F.R. § 101.22(a)(5) defines a "chemical preservative" by its *functionality*: "any chemical that, when added to food, **tends to prevent or retard deterioration** thereof." (Emphasis added.) In 21 C.F.R. § 101.22(j), FDA requires "[a] food to which a chemical preservative(s) is added shall . . . bear a label declaration stating . . . a separate description of its function, e.g., 'preservative', 'to retard spoilage', 'a mold inhibitor', 'to help protect flavor' or 'to promote color retention,'" all of which are preservative functions.[3] No such declaration is required when the additive is *not* functioning

---

[3] Section 562.600 of the FDA Compliance Policy Guide expands on labeling descriptors required for products containing chemical preservatives. Suggestions include "[ingredient name] **added as a preservative**" (emphasis added), and "preserved with [ingredient name]." Or the "precise preservative function" can be declared, such as "to promote color retention." *See* https://www.fda.gov/regulatory-information/search-fda-guidance-documents/cpg-sec-562600-preservatives-use-nonstandardized-foods-label-declaration. The Court may take judicial notice of this document and the other documents cited in this memorandum because they are either incorporated by reference in the complaint, or are matters of public record, court records, and/or published by FDA. *See Samuels v. Air Transp. Loc. 504*, 992 F.2d 12, 15 (2d Cir. 1993) (courts may consider documents "incorporated by reference in the pleadings"); *Simon v. Smith & Nephew, Inc.*, 990 F. Supp. 2d 395, 401 n.2 (S.D.N.Y. 2013) (taking judicial notice of "public records contained on the FDA website").

as a preservative, or for incidental additives.[4] *See, e.g.*, 21 CFR 101.100(a)(3). That is because such ingredients are not considered preservatives.

FDA explicitly regulates food additives that can function as preservatives and has deemed that they are to be treated as preservatives—including for labeling purposes—only when that is the function they perform. This regulatory process is the result of FDA's expert determination that such additives can perform multiple functions and that requiring that they be treated and labeled as preservatives in circumstances where that is not their function would have undesirable consequences. Plaintiff seeks to upend FDA's judgment and national uniform food label laws. Accordingly, plaintiff's state-law claims should be dismissed to avoid "'an obstacle to the accomplishment and execution of' the important means-related federal objectives" of FDA. *Geier*, 529 U.S. at 881 (citation omitted).

   **C.**  **Plaintiffs' Breach Of Express Warranty Claim Fails**

Plaintiff's breach of express warranty claim fails for the same reasons as her GBL claims. *See Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 806 (S.D.N.Y. 2021) (dismissing breach of warranty claim that was based on same allegations of consumer deception). Moreover, the complaint does not allege privity of contract or personal injury, which is fatal to their express

---

[4] FDA's guidance documents confirm that it only regulates an ingredient as a preservative if it is functioning as such. For example, in an April 11, 2023 warning letter, FDA advised that "[i]f ascorbic acid or citric acid ***are used as preservatives***, they must be declared in the ingredient list stating both the common or usual name of the ingredient(s) and a separate description of its function." Decl., Ex. C (emphasis added). Similarly, in a March 11, 2011 warning letter, FDA stated that "***[i]f the citric acid is functioning as a preservative*** in [the] finished juice products, the function needs to be included in accordance with the requirements of section 403(k) of the Act." Decl., Ex. A (emphasis added). A July 13, 2015 Warning Letter to Wonder Natural Foods Corp. similarly recognizes that only additives functioning as preservatives are regulated as such. Decl., Ex. B ("We note that the label bears the claim 'No Preservatives.' We note that if any ingredients such as tocopherol or sodium ascorbate ***are being used as preservatives***, this statement would be false and cause the product to be misbranded under 403(a)(l).") (emphasis added).

warranty claim. *Klausner v. Annie's, Inc.*, 581 F. Supp. 3d 538, 550 (S.D.N.Y. 2022).

## V. CONCLUSION

For each of these reasons, the Court should dismiss the complaint. Because Pepperidge Farm raised each of these issues in its pre-motion conference letter and plaintiff has not adequately addressed them, the complaint should be dismissed with prejudice.[5]

Dated:  May 13, 2024

Respectfully submitted,

*/s/ Dale J. Giali*
Dale J. Giali (*pro hac vice*)
KING & SPALDING LLP
633 West Fifth St., Suite 1600
Los Angeles, CA 90071-1503
Tel: (213) 443-4355
Email:dgiali@kslaw.com

Attorneys for Defendant PEPPERIDGE FARM, INCORPORATED

---

[5] Plaintiff concedes her claims for unjust enrichment and injunctive relief (*see* ECF No. 13 at n.1).

## CERTIFICATE OF SERVICE

The undersigned certifies that on May 13, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and thereby served on all counsel of record via CM/ECF.

Dated: May 13, 2024

                                        */s/ Dale J. Giali*
                                        Dale J. Giali