UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **VERONIKA WARD,** *individually and on behalf of all others similarly situated*,<br><br>         **Plaintiff,**<br><br>-against-<br><br>**PEPPERIDGE FARM, INC.,**<br><br>         **Defendant.** | 1:24-cv-00078 (ALC)<br><br>**OPINION & ORDER** |

**ANDREW L. CARTER, JR., United States District Judge:**

  Plaintiff Veronika Ward brings this putative class action against food manufacturer Pepperidge Farm, Inc., alleging that Pepperidge Farm participated in deceptive business practices and false advertising of its "Goldfish Flavor Blasted Baked Snack Crackers." Plaintiff Ward argues that the statement on the label, "No Artificial Flavors or Preservatives," is materially misleading given the presence of citric acid in the product. Pepperidge Farm moves to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons discussed below, the motion to dismiss is **DENIED**.

BACKGROUND

  **I. Factual History**

  Plaintiff Veronika Ward ("Plaintiff" or "Ward") is a citizen and resident of New York, New York. ECF No. 1 ¶ 7 ("Compl."). Defendant Pepperidge Farm, Inc. ("Defendant" or "Pepperidge Farm") is a corporation organized under the laws of Connecticut with its principal place of business located in Connecticut. Compl. ¶ 57–58. Defendant formulates, advertises, manufactures, and sells Goldfish Flavor Blasted Baked Snack Crackers ("Product") throughout New York and the entire United States. Compl. ¶ 8.

Defendant sells the Product with the statement "No Artificial Flavors or Preservatives" displayed on the packaging. Compl. ¶ 9. As depicted below, citric acid is one of the ingredients in the Product. Compl. ¶ 9.



*See* Compl. ¶ 9. Ward purchased the Product on numerous occasions within the last three years. Compl. ¶ 7. Most recently, Ward purchased the "Xtra Cheddar" flavor of the Product from a Walgreens pharmacy in New York, New York in or around October 2023. Compl. ¶ 7.

Ward alleges that the statement "No Artificial Flavors or Preservatives" is misleading because the Product contains citric acid. Compl. ¶ 7. She alleges that she understood "No Artificial Flavors or Preservatives" to mean that "the Product did not contain any artificial preservatives." Compl. ¶ 7. Ward alleges that citric acid is an artificial preservative. Compl. ¶ 7. If she had known

of the alleged misrepresentation, Ward alleges she would not have purchased the Product or paid so much for it. Compl. ¶ 7.

## II. Procedural History

Plaintiff Ward commenced this action on January 5, 2024. ECF No. 1. The complaint asserts several causes of action: (1) violations of N.Y. General Business Law ("GBL") sections 349 and 350; (2) breach of express warranty; and (3) unjust enrichment. Ward seeks certification of the class, injunctive relief, monetary and statutory damages, and attorneys' fees. Compl. at 15.

On May 13, 2024, Defendant moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 15–17. Plaintiff opposed on June 10, 2024. ECF No. 19. Defendant filed a reply on July 8, 2024. ECF No. 22. On October 24 and November 18 of 2024, and March 14 of 2025, Plaintiff filed notices of supplemental authority. ECF Nos. 23, 24, 26. Defendant submitted a notice of supplemental authority on March 14, 2025. ECF No. 25.

## STANDARD OF REVIEW

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," and accordingly, where the plaintiff alleges facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

In considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). However, the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555); *see also id.* at 681. Instead, the complaint must provide factual allegations sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555). In addition to the factual allegations in the complaint, the court may consider "the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010) (citation and internal quotation marks omitted).

## DISCUSSION

### I.     Plaintiff States a Claim for Deceptive Practices

Section 349 of the New York General Business Law makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." N.Y. Gen. Bus. Law. § 349(a). Section 350 prohibits "[f]alse advertising in the conduct of any business." N.Y. Gen. Bus. Law § 350. To state a cognizable claim for deceptive practices under either section, a plaintiff must show that the act or practice constitutes "(1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered [an] injury as a result of the deceptive act or practice." *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015) (citing *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675, 675 (N.Y. 2012)).

"New York courts apply an objective standard in determining whether acts or practices are materially deceptive or misleading: whether the alleged act is likely to mislead a reasonable

consumer acting reasonably under the circumstances." *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d 137, 149 (S.D.N.Y. 2022). "To survive a motion to dismiss, a plaintiff must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers." *Id.* Instead, "a plaintiff must plausibly allege that a significant portion of the general consuming public or of targeted customers, acting reasonably in the circumstances, could be misled." *Id.* "Although the question of whether a business practice or advertisement is misleading to the reasonable consumer is generally a question of fact, it is well settled that a court may determine as a matter of law that an allegedly deceptive [practice] would not have misled a reasonable consumer." *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y. Jan. 19, 2021).

Here, Defendant does not dispute that Ward has met her burden to plead consumer-oriented conduct and injury. Defendant only contests that it made a materially misleading representation. Defendant argues that Ward has failed to sufficiently plead that citric acid is a preservative and that it is artificial. For the following reasons, the Court disagrees.

a. *Plaintiff has sufficiently alleged that citric acid is a preservative*

Ward alleges that the Product's statement, "No Artificial Flavors or Preservatives," is false and likely to mislead a reasonable consumer because citric acid is a preservative. To support this claim, Ward cites to FDA descriptions of citric acid and warning letters suggesting that citric acid is a preservative. Compl. ¶¶ 12, 13, 14. This is sufficient to meet Plaintiff's minimal burden. *See Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 143 (S.D.N.Y. 2021) (finding that similar allegations "stated plausibly that the 'no preservatives' label was false and misleading").

Defendant alternatively argues that Ward fails to allege citric acid functions as a preservative in the Product. *See* ECF No. 16 at 6–8. Reading the complaint in a light most favorable to Ward, the Court disagrees. She alleges that citric acid "stabilizes and preserves food products"

5

and "functions as a preservative" in the Product. Compl. ¶¶ 15, 16, 17. These allegations meet Ward's burden "to establish that citric acid functions as a preservative" in the Product. *See Simeone v. T. Marzetti Co.*, No. 21-CV-9111 (KMK), 2023 WL 2665444, at *6 (S.D.N.Y. Mar. 28, 2023).

    b. *Plaintiff has sufficiently alleged that citric acid is artificial*

Defendant argues that Ward fails to allege the citric acid is an "artificial preservative." ECF No. 16 at 4–6. Generalized and conclusory allegations about an ingredient's artificial nature are insufficient to survive a motion to dismiss. *See Valencia v. Snapple Beverage Corp.*, No. 23-CV-1399 (CS), 2024 WL 1158476, at *5 (S.D.N.Y. Mar. 18, 2024). Where an ingredient can be found in both natural and artificial forms, a plaintiff must plausibly allege that the artificial version is present in the product. *See Hawkins v. Coca-Cola Co.*, 654 F. Supp. 3d 290, 306 (S.D.N.Y. 2023) ("[T]he allegations in the instant Complaint are a far cry from raising 'any factually substantiated allegations' that the Product contains artificial malic acid, rather than natural malic acid.").

Ward alleges that "more than 90 percent of commercially produced citric acid, including the citric acid contained in the Product[], is manufactured through a processed derivative of black mold, *Aspergillus niger*." Compl. ¶ 19. Ward compares this to the natural form of citric acid, which "derive[s] from certain citrus fruits." *Id.* Ward alleges that compared to this natural version, manufactured citric acid can cause negative side effects, including "swelling and stiffness resulting in joint pain; muscle pain; stomach pain; and shortness of breath." *Id.*

To determine whether Ward has sufficiently alleged that the Product contains an artificial ingredient, the Court considers *Valencia v. Snapple Beverage Corporation*. In that case, Judge Seibel analyzed whether a reasonable consumer would consider citric acid manufactured from *Aspergillus niger* to be artificial. *See Valencia*, 2024 WL 1158476, at *5. The court found that "[p]laintiff's bare claim here that citric acid today is made from mold rather than citrus fruit cannot,

6

absent any allegation specific to the Products and absent any basis for her assertion about all citric acid, be sufficient." *Id.* Even if such conclusory allegations were sufficient to demonstrate the presence of manufactured citric acid, Judge Seibel concluded that "[a] reasonable consumer would not think that a compound found in nature is artificial even if it is produced in a different way than nature produces it, if the way it is produced is that it is derived from a natural product and does not contain anything synthetic." *Id.* at *6. Given *Valencia*, the Court must determine (1) whether Ward adequately alleges that manufactured citric acid is in the Product and (2) whether manufactured citric acid should be considered artificial.

To allege that manufactured citric acid is in the Product, Ward pleads that it is the industry standard to use the manufactured citric acid. *See* Compl. ¶ 19. Ward raises as supplemental authority one case where the plaintiffs alleged that "like more than 90 percent of commercially produced citric acid today, the citric acid contained in the Products is manufactured through a processed derivative of black mold." *See Goetz v. Ainsworth Pet Nutrition, LLC*, No. 24-CV-04799 (JPO), 2025 WL 692426, at *6 n.3 (S.D.N.Y. Mar. 3, 2025) (internal quotations and alternations omitted). Judge Oetken noted that "[c]ourts have previously rejected this kind of guilt-by-association reasoning." *Id.* (citing *Indiviglio v. B&G Foods, Inc.*, No. 22-CV-9545, 2023 WL 9022866, at *4 (S.D.N.Y. Dec. 29, 2023)). But, because the plaintiffs had also alleged other synthetic ingredients were used in the product, Judge Oetken found the defendant was "more likely to use the synthetic form[] of [citric acid]." *Id.*

Although Ward does not raise allegations of the same kind, the out-of-Circuit supplemental authority indicates that scientific studies, like those Wards incorporates by reference, should similarly elevate her allegations above conclusory. *See* Compl. ¶ 19 n.13–n.15. In *Hayes v. Kraft Heinz Company*, the plaintiffs cited "several academic studies and articles describing the history

of citric acid and how the artificial variety derived from *Aspergillus niger* has overtaken the natural variety." No. 1:23-CV-16596, 2024 WL 4766319, at *3 (N.D. Ill. Nov. 13, 2024). Relying on this information, the court found that the "complaint [went] beyond simple allegations of a common industry practice and [was] sufficient to provide enough factual support to raise [plaintiffs'] right to relief above a speculative level." *See id.* (internal quotation omitted). The Court agrees with this conclusion. Just as the presence of other synthetic ingredients may contribute to a plausible allegation, the articles Ward cites about the declining production of natural citric acid and proliferation of manufactured citric acid in food products bolster her allegation that manufactured citric acid is in the Product. *See* Compl. ¶ 19 n.13–n.15.

Ward must still demonstrate why manufactured citric acid should be considered artificial. *Valencia*'s holding relied on that fact the plaintiff "describe[d] no respect in which the citric acid derived from *Aspergillus niger* differs chemically from the citric acid derived from citrus fruits." 2024 WL 1158476, at *6. In *Hayes*, alleged "adverse health events like joint pain with swelling and stiffness, muscular and stomach pain, as well as shortness of breath" were sufficient to demonstrate a chemical difference between natural and manufactured citric acid. 2024 WL 4766319, at *3 (alternation omitted). Given the industrial process and chemical difference, the court concluded that a reasonable person would consider manufactured citric acid artificial. *Id.* Ward similarly alleges negative health effects caused by manufactured citric acid. *See* Compl. ¶ 19. Considering industry practices, the production process, and the chemical differences, the Court finds Ward has sufficiently alleged that the citric acid used in the Product is artificial.

    c.  *Plaintiff has sufficiently alleged that the Product's label is deceptive*

Even if Ward alleges the citric acid in the Product to be an artificial preservative, Defendant argues that the ingredient list and Nutrition Facts visible on the Product's packaging render it

implausible that a reasonable consumer would be deceived by the statement "No Artificial Flavors or Preservatives." *See* ECF No. 16 at 8. "At the pleading stage, a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer, but it must proceed with care in doing so as the inquiry is generally a question of fact not suited for resolution at the motion to dismiss stage." *Kelly v. Beliv LLC*, 640 F. Supp. 3d 286, 295 (S.D.N.Y. 2022) (internal quotations omitted); *see also Duran v. Henkel of N. Am.*, 450 F. Supp. 3d 337, 346 (S.D.N.Y. 2020) (collecting cases).

To make this determination, the Court must "consider the challenged advertisement as a whole, including disclaimers and qualifying language." *Hardy v. Ole Mexican Foods, Inc.*, No. 22-1805, 2023 WL 3577867, at *3 (2d Cir. May 22, 2023). But "a reasonable consumer should not be expected to consult the Nutrition Facts panel on the side of the box to correct misleading information set forth in large bold type on the front of the box." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 637 (2d Cir. 2018). "'Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.'" *Id.* (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939–40 (9th Cir. 2008)).

While the "No Artificial Flavors or Preservatives" is not printed on the front of the Product or in large type, if "one must maneuver and rotate the [product]" to correct a false statement, *Mantikas*'s holding applies. *Sharpe v. A&W Concentrate Co.*, 481 F. Supp. 3d 94, 103 (E.D.N.Y. 2020); *see also Foster v. Whole Foods Mkt. Grp., Inc.*, No. 23-285-CV, 2023 WL 8520270, at *2 (2d Cir. Dec. 8, 2023) ("[C]ontextual information on the reverse of the product's packaging [can]not overcome clearly inaccurate factual representations on the front labeling."). Even if the Court were to find that *Mantikas* does not apply to Ward's claims, "where, as here, many ingredients . . . are ones that a reasonable consumer may believe are natural . . . a reasonable

9

consumer may not be aware that these ingredients . . . are actually synthetic." *Orrico v. Nordic Nats., Inc.*, No. 22-CV-03195-NRM-CLP, 2023 WL 6308015, at *5 (E.D.N.Y. Sept. 28, 2023) (applying this to a product containing citric acid). "Therefore, even if a consumer were to turn to the back label and see these ingredients, they may be no less in the dark as to whether the composition of Defendant's [P]roduct is entirely 'natural.'"[1] *Id.*

Accordingly, Ward has sufficiently alleged that the Product's packaging is deceptive. Although uncontested, the Court notes that Ward has also stated an injury, given her allegation that "she would not have purchased the Product, or, at the very least, would have only been willing to purchase the Product at a lesser price" had she known it contained an artificial preservative. Compl. ¶ 7; *see Simeone v. T. Marzetti Co.*, No. 21-CV-9111 (KMK), 2023 WL 2665444, at *8 (S.D.N.Y. Mar. 28, 2023) (collecting cases on the "price premium" theory of injury). Therefore, Ward adequately pleads a materially misleading representation under GBL sections 349 and 350.

## II.     Plaintiff's GBL Claims Are Not Preempted

Defendant argues that federal law preempts Ward's GBL claims because they create an "obstacle to the accomplishment of the goals of a carefully calibrated federal food labeling system promulgated by the Food & Drug Administration." ECF No. 16 at 1. The Supremacy Clause "invalidates state laws that interfere with, or are contrary to, federal law." *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985). "State action may be foreclosed by express language in a congressional enactment, by implication from the depth and breadth of a

---

[1] This also distinguishes Ward's allegations from those in the supplemental authority raised by Defendant. *See* ECF No. 25. In that case the "defendant's package included a description of the process by which the stevia was extracted," rather than solely the ingredient's name. *Karabas v. TC Heartland LLC*, No. 24-CV-2722 (AMD) (VMS), 2025 WL 777001, at *7 (E.D.N.Y. Mar. 11, 2025).

congressional scheme that occupies the legislative field, or by implication because of a conflict with a congressional enactment." *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001) (citations omitted); *accord Wachovia Bank, N.A. v. Burke*, 414 F.3d 305, 313 (2d Cir. 2005). "The party arguing that federal law preempts a state law bears the burden of establishing preemption." *Simeone v. T. Marzetti Co.*, No. 21-CV-9111 (KMK), 2023 WL 2665444, at *8 (S.D.N.Y. Mar. 28, 2023) (citing *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 725 F.3d 65, 96 (2d Cir. 2013)).

The Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, et seq. ("FDCA"), as amended by the Nutrition Labeling and Education Act, Pub. L. No. 101-535, 104 Stat. 2353 (1990), "forecloses a 'State or political subdivision of a State' from establishing requirements that are of the [same] type but 'not identical to' the requirements in some of the misbranding provisions of the FDCA." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 109 (2014) (quoting 21 U.S.C. § 343-1(a)). "Enforcement of the FDCA is largely committed to the FDA." *Simeone*, 2023 WL 2665444, at *8 (citing *POM*, 573 U.S. at 115); s*ee also Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001). When an ingredient functions as a preservative, "FDA regulations dictate that the product must 'bear a label declaration stating both the common or usual name of the ingredient(s) and a separate description of its function.'" *Simeone*, 2023 WL 2665444, at *8 (quoting 21 C.F.R. § 101.22(j)). Given that the FDA regulates the labeling of foods with ingredients functioning as preservatives, Defendant argues that Ward's GBL claims are preempted. *See* ECF No. 16 at 11. The Court disagrees.

A plaintiff may challenge the truth or misleading nature of a product's label without necessarily "seek[ing] to impose new standards or requirements" dictated by federal law. *In re Kind LLC "Healthy & All Natural" Litig.*, 287 F. Supp. 3d 457, 464 (S.D.N.Y. 2018); *see also*

11

*Ault v. J.M. Smucker Co.*, No. 13 CIV. 3409 PAC, 2014 WL 1998235, at *3 (S.D.N.Y. May 15, 2014) ("Eliminating 'All Natural' has no effect on Defendant's ingredient labeling and therefore cannot conflict with FDA labeling requirements."); *Simeone*, 2023 WL 2665444, at *8 ("Plaintiffs' claims are not preempted by the FDCA because they do not address the sufficiency of Defendant's labelling under the FDCA but rather its truthfulness."). Likewise, a claim to remove the label "No Preservatives" "does not conflict with the federal requirement, which only mandates identifying the preservative." *Ashour v. Arizona Beverages USA LLC*, No. 19 CIV. 7081 (AT), 2020 WL 5603382, at *3 (S.D.N.Y. Sept. 18, 2020).

Defendant argues that Ward's claim differs from this authority, as the "FDA has affirmatively determined that it will not require labeling citric acid as a preservative unless it functions as a preservative; meaning that, according to FDA, an ingredient is not considered a preservative unless it is being used as one." ECF No. 22 at 7. But this seems no different from cases cited above. Even if Defendant is not arguing that Ward's claims would require additional labelling, its argument still does not articulate how a challenge to a deceptive label would somehow "upend [the] FDA's judgment and national uniform food label laws." ECF No. 16 at 11. Critically, "[t]he FDCA does not regulate what must be excluded from a label regarding preservatives, only what must be stated on the label." *Ashour*, 2020 WL 5603382, at *3.

If Defendant's argument actually pertains to whether Ward's claim improperly asserts a violation of FDA regulations, "[t]he FDCA does not preempt state law claims where they incorporate, but do not depend entirely upon, an FDCA violation and are premised on conduct that would give rise to liability under traditional common law principles." *Simeone*, 2023 WL 2665444, at *9 (finding claims under GBL §§ 349 and 350 to "sound in fraud and . . . not rely entirely on an

FDCA violation") (internal quotations and alterations omitted). Based on the pleadings, there is no obstacle between state and federal law.

### III. Plaintiff States a Claim for Breach of Express Warranty

Defendant argues that Ward's claim for breach of express warranty must fail for the same reasons it argued her GBL claims must, but offers no more details than that. *See* ECF No. 16 at 11. Generally, where courts find a plaintiff adequately states her GBL claims, they find those allegations also suffice to state the elements for a breach of express warranty. *See e.g.*, *Wise v. Combe Inc.*, 724 F. Supp. 3d 225, 238–39 (S.D.N.Y. 2024) (declining to dismiss plaintiffs' express warranty claim where plaintiffs adequately pleaded violations of GBL §§ 349 and 350); *Mason v. Reed's Inc.*, 515 F. Supp. 3d 135, 146 (S.D.N.Y. 2021) (same); *Grossman v. Simply Nourish Pet Food Co. LLC*, 516 F. Supp. 3d 261, 283 (E.D.N.Y. 2021) (same); *Goetz v. Ainsworth Pet Nutrition, LLC*, No. 24-CV-04799 (JPO), 2025 WL 692426, at *8 (S.D.N.Y. Mar. 3, 2025) (same). Absent any specific argument from Defendant as to why such a conclusion is inappropriate here, the Court finds Ward has stated the elements for breach of express warranty.

Defendant additionally moves to dismiss this claim because the "complaint does not allege privity of contract or personal injury." ECF No. 16 at 11. "[U]nder New York law, express and implied breach of warranty claims seeking to recover for financial injuries, like those here, require a showing of privity between the manufacturer and the plaintiff unless an exception applies." *MacNaughton v. Young Living Essential Oils*, LC, 67 F.4th 89, 101 (2d Cir. 2023). Defendant argues that Ward fails to plead privity or that one of the exceptions to this rule applies. *See* ECF No. 22 at 8. But this is not so. Ward highlights the "exception to the privity requirement [which] applies for misrepresentations contained in 'public advertising or sales literature.'" *Wise*, 724 F. Supp. 3d at 238; *see* ECF No. 19 at 12–13 (raising this exception); *see also Newman v. Bayer*

13

*Corp.*, 695 F. Supp. 3d 469, 483 (S.D.N.Y. 2023) ("[A]n express warranty may include specific representations made by a manufacturer in its sales brochures or advertisements regarding a product upon which a purchaser relies." (internal quotation omitted)); *Goldemberg v. Johnson & Johnson Consumer Companies, Inc.*, 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) (articulating the same exception). This exception applies to Ward's claim and, therefore, "her lack of privity does not warrant dismissal of the express warranty claim under New York law." *Wise*, 724 F. Supp. 3d at 238.

## CONCLUSION

For the reasons stated above, Defendant Pepperidge Farm's motion to dismiss the Complaint is **DENIED**. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 15. This case will be referred to Magistrate Judge Robyn F. Tarnofsky for general pretrial matters in a separate order.

**SO ORDERED.**

Dated:   **March 26, 2025**
         **New York, New York**

                                         **ANDREW L. CARTER, JR.**
                                         **United States District Judge**